DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MAIA T. PEREZ (MABN 672328)
Assistant United States Attorney
    150 Almaden Blvd., Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Facsimile: (408) 535-5066
    Email: maia.perez@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JAMES D. KOVACS II,<br>   a/k/a JAMES D. KOVACS, JR.<br><br>    Defendant. | CASE NO. CR 18-588 LHK<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date: January 8, 2020<br>Time: 9:15am<br><br>Hon. Lucy H. Koh |

## I. INTRODUCTION

On January 8, 2020, defendant James D. Kovacs II ("Defendant"), will stand before the Court to be sentenced after pleading guilty to Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The government respectfully requests that this Court accept the plea agreement submitted by the parties under Federal Rules of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B). The U.S. Probation Office concurs with the plea agreement's offense level calculations, which result in a total offense level of 28. Based on Defendant's Criminal History Category I, Defendant's Guidelines Range is a term of 78 to 97 months' imprisonment. The United States believes that a sentence of 78

months' imprisonment, at the low end of the Guidelines Range, is sufficient but not greater than necessary to achieve the goals of sentencing.

## II. DEFENDANT'S OFFENSE CONDUCT

Probation's Presentence Report ("PSR") accurately set forth the facts of Defendant's offense conduct, and the United States will not repeat them at length here. The PSR and plea agreement both set forth the factual basis for the application of the base offense level of conduct and each of the sentencing enhancements applicable in this case.

Defendant came to the attention of the FBI during the agency's investigation of Playpen, a website dedicated to the advertisement and distribution of child pornography and the discussion of matters pertinent to the sexual abuse of children. *See* PSR ¶ 8. Playpen operated only on the TOR network, which is available only to Internet users who are aware of its existence, and required that a user install special software in order to access the network. *Id.* at ¶ 7. Websites on TOR are secret, such that a user would have to know the specific address of the Playpen website in order to access it. *Id.* Accordingly, only a user who had installed the appropriate software on the user's computer and already knew Playpen's long website address could find Playpen.

The FBI identified Playpen user "somedummy," later identified as Defendant, as having actively logged into and accessed child pornography on the Playpen for 13 hours and 36 minutes between December 2, 2014 and March 3, 2015. *Id.* at ¶¶ 9-10. During this time, Defendant accessed various child pornography posts that included photographs and links to videos depicting children as young as three years old engaged in oral and vaginal sex with adults. *Id.* at ¶¶ 10-13.

On September 1, 2015, a search warrant was executed on Defendant's residence and numerous digital devices were seized. *Id.* at ¶ 14. In total, Defendant's devices contained 2,868 images and 187 videos of child pornography. *Id.* at ¶ 15. The materials depicted prepubescent minors – including infants and toddlers – engaged in sexually explicit conduct, some of which included bestiality and sadistic and masochistic abuse. *Id.* at ¶¶ 15, 18-20. The FBI case agent opined that Defendant's child pornography collection was "one of the worst" she has ever seen due to the amount and type of conduct he saved to his devices. *Id.*, at ¶ 20.

Of the 3,055 child pornography images and videos found on Defendant's computer, 737 image files and 61 videos belonged to a known victim series, according to NCMEC. *Id.* at ¶¶ 15, 20. In total, 123 known series were identified, each depicting one or more child victims. *Id.*, at ¶ 20. 24 victims and their families have provided victim impact statements which detail the ongoing grief, humiliation, and fear the victims continue to experience to this day, as well as the ongoing cost of their therapy and medical expenses caused by their trauma. *Id.*, at ¶¶ 23-50.

15 identified victims have requested restitution from the Court. *Id.* The parties' plea agreement stipulates that a restitution hearing take place within 90 days of the sentencing hearing; the United States will address the victims' restitution requests in a separate memorandum prior to the restitution hearing. *See* ECF 13, at 5.

### III. DEFENDANT'S OFFENSE LEVEL, CRIMINAL HISTORY & GUIDELINES RANGE

Defendant pled guilty pursuant to a Rule 11(c)(1)(B) plea agreement, and the parties agreed to the following Guidelines calculation, with which Probation concurs:

| | | | |
|---|---|---|---|
| a. | <u>Base Offense Level</u>, U.S.S.G. § 2G2.2(a)(1): | | 18 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2 | | |
| | § 2G2.2(b)(2) – Material involved a prepubescent minor | | +2 |
| | § 2G2.2(b)(4) – Material involved sadistic or masochistic conduct and abuse or exploitation of an infant or toddler | | +4 |
| | § 2G2.2(b)(6) – Offense involved the use of a computer for possession of materials | | +2 |
| | § 2G2.2(b)(7)(D) – Offense involved 600 or more images | | +5 |
| c. | <u>Acceptance of Responsibility</u>: | | -3 |
| | If Defendant meets the requirements of U.S.S.G. § 3E1.1, he may be entitled to a three-level reduction for acceptance of responsibility. | | |
| d. | <u>Adjusted Offense Level</u>: | | 28 |

The United States agrees with Probation's calculation that Defendant is in Criminal History Category I.

A total offense level of 28 and Criminal History Category I results in a sentencing range of 78 to 97 months. *See* PSR ¶ 108.

## IV. UNITED STATES' SENTENCING RECOMMENDATION

### A. A Sentence of 78 Months is Appropriate Based on Section 3553(a) Factors

"The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the goals of section 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted). The Sentencing Guidelines are one among the several § 3553(a) factors that courts are directed to consider in arriving at an appropriate sentence. *Id.* These goals include the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment; to afford adequate deterrence to criminal conduct; to protect the public from further crimes from the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a). "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) (*en banc*).

#### 1. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

The child pornography that Defendant possessed records the sexual exploitation and rape of real children, serious crimes in the view of Congress. In passing the *Child Pornography Prevention Act of 1996*, Congress recognized that production of child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved," because it creates a permanent record of the child's abuse, allowing for continued victimization of that child. S. Rep. 104-358 § 2 (1)(2) (1996). The Ninth Circuit has recognized that child pornography's victims are the actual children in the images, and not just society in general. *United States v. Boos*, 127 F.3d 1207, 1210 (9th Cir. 1997).

Indeed, the victim impact statements submitted by two dozen of Defendant's victims and their families detail the ongoing grief, humiliation, and fear experienced by the victims, and the incessant emotional and psychological issues they continue to experience as a result of their trauma. In just one example, the adoptive father of a victim states of his teenage daughter:

> "She is on an emotional roller coaster ride of temper tantrums, like kicking or hitting walls, people – especially her little sister – and the appliances in our home. I realize that she is caught up in thinking about her past and the ongoing threat of the pictures circulating around the internet. Every day of her life she is in constant fear that someone will see those pictures and recognize her and that she will be humiliated all over again.

UNITED STATES' SENTENCING MEMORANDUM
CR 18-588 LHK

> We see in her eyes that it hurts for her to know that someone is looking at them – at her – when she was just a little girl being abused for the camera. . . But she is so powerless to stop it just like she was when she was powerless as a little girl to stop what was done to her.
>
> \* \* \*
>
> After the honeymoon stage of our adoption she has made family life miserable on so many days and her feelings are so robust now that she has gotten older that they become her reality.  The pictures of the past are cemented in her mind.  They are so authentic that she will hide under beds and tables with layers of clothing.
>
> \* \* \*
>
> She has tried to jump out of a third story window of our home and we had to place her in a behavioral center for five days.  She has kicked holes in the wall and . . . been ordered to do community service and has served time in jail.  She is harming herself by biting herself on the arm and by picking at the wounds she has become infected.  She says she will be scared for life."

In another impact statement, a victim who was raped at 10 years old shared:

> "I am a victim of the worst kind of exploitation: child porn.  Unlike other forms of exploitation, this one is never ending. Every day, people are trading and sharing videos of me as a little girl being raped in the most sadistic ways.  They don't know me, but they have seen every part of me. They are entertained by my shame and pain…I still have nightmares that come from knowing that pictures of me are spread around the internet by people with perverted interests in my pain…Please think of me and what I am going through."

Defendant's crimes are serious and they involve real child victims. Any argument that his crimes did not seriously injure anyone fails to account for the gravity of the direct and indirect impact of Defendant's criminal conduct.

By soliciting child pornography and seeking to gratify his sexual appetite, Defendant further helped to maintain and expand a marketplace for such images.  The Ninth Circuit has observed that consumers of child pornography, such as Defendant, fuel demand for the unlawful production of this material.  "[M]erely possessing child pornography is not a victimless crime" because possession "fuels the demand for the creation and distribution of child pornography," and evidence shows "the harm that children suffer when they are used in the creation of child pornography [ and] . . . when that pornography is distributed to others." *United States v. Daniels*, 541 F.3d 915, 924 (9th Cir. 2008).  "The greater the customer demand for child pornography, the more that will be produced." *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007).  Congress too has observed that the existence of pornographic materials containing children "creates the potential for many types of harm in the community and presents a clear and present danger to all children; and [] inflames the desires of child molesters, pedophiles, and child pornographers who prey on children," leading to the abuse and

UNITED STATES' SENTENCING MEMORANDUM
CR 18-588 LHK

5

exploitation of children as creation and production of additional pornographic material is needed.  S. Rep. No. 104-358, § 2 (10).

Defendant's own statement in the PSR illustrates this connection and the insatiable need for ever more abusive material: "Just the memory of [a young girl's pornographic image] would banish my anxiety and emotions and numb them for a long time…till it didn't anymore and I had to go look for more."  *See* PSR ¶ 53.  His possession and enjoyment of child pornography is the progressive sexual exploitation of children that Congress identified in imposing strict penalties for sexual abuse crimes.  Even if Defendant himself did not molest children, his actions contributed to the sexual abuse of children and the lifelong scars those children will bear.

### 2. The Nature and Circumstances of the Offense

Defendant possessed 2,868 images and 187 videos of child pornography in a case the FBI agent described as "one of the worst" she has ever seen.  Defendant's massive collection of images and video depict horrific exploitation of minors – some as young as infants and toddlers –  who endured abuse that is sadistic and masochistic, including sexual bondage, sex by force, and sexual abuse involving animals.  In one such video, a girl approximately 9 years old had all four limbs tied down with rope while she gave oral sex and was digitally penetrated by an adult male.  Another video depicted the same girl fellating a male dog.  A screenshot of the girl fellating the dog was saved as a separate image on Defendant's device.

The United States sympathizes with Defendant's account of his childhood, but his past does not cancel out his victimization of the innocent young girls whose own childhoods he helped ruin.  It is also notable that Defendant denied suffering any emotional or verbal abuse from his mother, who he admitted "doted on him, and always told him how wonderful he was and how he would succeed in life."

The Playpen account data and sheer number of images in his possession demonstrate that Defendant's child pornography collection was not a one-time lapse in Defendant's judgment but rather an obsession that he cultivated and enjoyed over a period of months, if not longer.

In building this trove of imagery, Defendant took steps to install software in order to utilize the TOR network.  He very purposefully sought out child pornography and equally purposefully sought to cover his tracks.  He knew what he was doing was wrong, yet he continued to collect and accumulate

these images without regard for the victims and the shame they are forced endure.  Only when he was caught, only when this shame affected his own family, did Defendant finally make any effort to stop.

Other Courts within this District have recognized the seriousness of Defendant's offense and the significant harm that it inflicts on the minor victims as well as the larger community.  In other cases stemming from the same FBI investigation as the instant case, the defendants have received sentences of 60 months, 72 months, and 108 months.  *See, respectively United States v. Henderson*, CR 15-565 WHO; *United States v. Vortman*, CR 16-210 WHA; and *United States v. Hammond*, CR 16-102 JD.

A sentence of 78 months' imprisonment is therefore sufficient but not greater than necessary to achieve the goals of sentencing.

## V. **CONCLUSION**

For all these reasons, the United States respectfully requests that the Court sentence Defendant to 78 months in prison, to be followed by at least five years of supervised release, pay a $100 special assessment, pay a $5,000 special assessment under the Justice for Victims Trafficking Act, forfeit the items listed in Paragraph 11 of the plea agreement, and pay restitution to the victims in an amount to be determined by the Court at a later restitution hearing.

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

Dated: January 1, 2020

/s/
MAIA T. PEREZ
Assistant United States Attorney